May it please the court. I'm Charles Irvin. I'm here on behalf of the plaintiffs appellants in this case and we're here today on a flooding cases. Houston floods. We all understand that. Houston has flooded in the past. Houston will flood again in the future unfortunately and as we stand here today all Houstonians are working together and thankfully trying to find solutions to some of these flooding problems that now are being recognized. However this case is about residents who flooded long before Hurricane Harvey. Long before. And this case is about residents who were trying before Hurricane Harvey to seek their own solutions to the cause of their flooding. This lawsuit is that attempt to seek solutions. We alleged, the plaintiffs alleged in this case, that the flooding that they suffered in neighborhoods north and south of Memorial City Mall were caused by the actions of the defendants. The defendants of the City of Houston, the Memorial City Redevelopment Authority and TERS 17. And long before Hurricane Harvey hit town our clients were advocating for solutions because the truth is that we all knew what the problems were. And thus their attempts to use the political process fell on deaf ears. Fell on deaf ears with the One, we're here on 12B. And the district court dismissed this case on 12B1 and 12B6. Therefore there has not been an extensive factual development. There was no oral argument on the 12B motions. But the question then becomes did the plaintiffs plead sufficient plausible facts to this action? Second point, this is not a case about trying to control the entire zoning and flood control system of the City of Houston. We're talking about a small geographic area. We're talking about the residential neighborhoods immediately north and immediately south of I-10, you know, north of the commercial area which is the authority and the TERS. So we're not trying to ask the court to become a super zoning authority to start regulating flooding in the whole of Houston. Third point, this small commercial area is unusual because it is what is called a tax increment reinvestment zone. And I don't know how familiar your honors are. We briefed it. But the tax increment reinvestment zone, the TERS, is a state authorized process whereby local areas are established and then the incremental benefit of the property taxes that are raised are then allowed to be decided how they spend that, allowed to be decided by the entities within that zone. And here we have a TERS, TERS 17, that is entirely commercial. And we alleged, we think we sufficiently alleged that the commercial, the decisions of the commercial entities that control that TERS were using public money, the public FISC, to benefit themselves at the expense of the residential neighborhoods north and south. That's the only way water gets out of the TERS. Fourth point, none of this flooding was unforeseen. We alleged flooding in 2009, 2015, the Memorial Day flood, 2016, the tax day flood. This authority, the city, and the TERS have developed super sophisticated models. They know exactly how many inches of water are going to occur at a particular location in the additional detention here, how much less flooding will we get? If we develop this property over here, how much more flooding will we get? So none of this is act of God or unforeseen circumstances. This is entirely understood. The engineers know how to fix this problem. And in fact, in 2002, the city, the TERS The clock's ticking. I'm really waiting to hear something about these claims because there were several different claims, but you have, you're appealing a dismissal of all the federal claims against the reinvestment zone number 17. Is that right? Yes, Your Honor. And the district court determined that those claims ought to be dismissed because that zone was not the final policymaker. Is that also correct? Was that the basis of the determination? That was the basis for one of the court's determinations, Your Honor. So you're going to tell me why that's wrong? Yes, we believe that that is wrong. First of all, the TERS and the authority have a unitary board, the same board members. They identify the same board meetings. The board meetings are held at identical times. They do not have different board minutes. So any decision by the authority is a decision by the TERS. And we believe that, you know, in terms of the Minnell doctrine, the TERS and the authority as a unitary decision-making body have a policy. And that policy is to get water out of the commercial properties that their clients represent and move it into the neighborhoods and then not address what happens, the consequences of what happens when that water hits the neighborhoods. The residential neighborhoods are literally north and south of the TERS and the authority's area. And they make decisions. That's their policy, is get water out of the TERS, fix the problems in the TERS for the commercial entities, move it into the neighborhoods. And that is the very definition of an arbitrary governmental action. They're favoring one entity. If you look at the Simi case that we briefed, they're favoring one landowner, here the commercial entities in the TERS, at the expense of the residents, the residents north and south. And for years they were seeking relief and they just did not get it. So, you know, our points are that the, you know, first we are trying to seek a solution to this problem. We did not ask for damages. Our clients did not seek a Fifth Amendment inverse condemnation case. We're not asking for any damages, any monetary awards against the city of Texas. And after years and years and years of trying to get that solution, they finally asked to file a lawsuit. And so we're, you know, our lawsuit is substantive due process and Fourth Amendment seizure claim. We have a due process of law claim under the Texas Constitution. And it's similar, you know, I was surprised to hear some of the arguments before, but it's very similar. We, once again, not asking for money damages. Therefore, some of those consequences of whether, you know, we have the right to claim money damages against the city, the local government, those just don't come into play. We're asking for injunctive relief. We're asking not for this court to take over the entirety of, you know, governmental decision making with regard to flood control, but simply to have a role in, you know, ordering the local governmental entities that for years have ignored the complaints and the petitions from the citizens to actually step in and say, these citizens have constitutionally protected property rights. Not to have a local governmental entity make decisions that benefit private parties at the expense of other private parties. That's the key question. I mean, you only have to have lived through the last year in the city, or two years, to realize that your client is not the only person who can, only group that could assert claims like this. I mean, how do you, aren't you really asking us to take care of your customers and forget what's happened out in the rest of the city? The answer, yes, you're here. And they're not. But the city's here. I would answer no, Your Honor. I think the key distinction here is we're not trying to take control of the entire city. What is the difference here is the fact that the memorial city area is a thousand acres of commercial area that has been designated by the city, and that thousand acres is entitled to collect the property taxes within the commercial area and then decide themselves how to spend that public fisc. And they have decided to spend that public money in a way that benefits themselves at the expense of the residents north and south. That's the difference. It's not like the public fisc is going into a big pot of money, then the city makes a global decision about where to spend it. That, we think, is a key distinction here. I hesitate to use the word self-dealing, and we didn't use it in our brief, but that's kind of essentially what's going on. The private entities, the commercial entities, are making decisions about flood control and drainage projects using public money in their zone at the expense and causing damage outside the zone, and then refusing to fix the problems that they cause. A couple of other points I want to make. One, you know, citizens, we think, have to have this avenue of relief. There are many cases the Fifth Circuit has recognized that, you know, substantive due process is a valid cause of action when citizens have these kinds of complaints. We do think that here there is a real issue that the unique factors of the combination of this creation under Texas tax law that encourages this kind of, you know, self-interest using public money is a particular feature of this case. I don't think that this case implicates, you know, these catastrophic, far-reaching consequences that we are asking a federal court to take over the whole of Houston's flooding problems. One of our main complaints about the district court's opinion was the district court re-alleged substantive due process and a Fourth Amendment seizure claim. The seizure claim being the meaningful interference with our client's property rights. And that's clearly recognized under state law. What we have a big problem with the district court's opinion is the district court essentially ignored what we wrote in our complaint, the black and white letters of what we wrote in our complaint, and analyzed the entire case as a Fifth Amendment takings claim, which we did not allege, and as a tort claim. And I understand that sometimes courts are allowed to analyze cases as sounding and tort if you artfully plead it in some other way, but this is not an artful pleading case. We clearly alleged we don't want compensation. We don't want just compensation. We want injunctive relief, and that's why we sought relief under the Fourth Amendment, the severance case, under the Presley case, and substantive due process under Simme and McKesker and those other cases that the Fifth Circuit clearly has recognized. You know, it seems to me that this case harkens back to very, very old land use regulation law. Back when you had tanneries or candle factories or the government was allowing some of those to coexist near residential neighborhoods and so on, and wasn't it at that time that the Supreme Court developed the idea that the government basically has a right to do what it wants to if it has a rational basis? And I'm sure the rational basis here would have been the development of the Memorial Terge area, of which I am a near resident, and I have a frenemy relationship with that area as a personal matter. But again, the rational basis argument seems to be a particular block to what you are contending. Thank you, Your Honor. So what I would say about rational basis is a terge is formed under particular circumstances, under state law, and the terge is formed to resolve, to fix a blight or a menace in a geographical area. That's the terms of the statute of 311 of the Texas Tax Code. What is unreasonable, and we don't think the government, and we haven't seen it in the briefing, the government can articulate any rational basis, is to form a terge and then allow that terge to fix their own problems, fix their blight and their menace by transferring that menace into the residential neighborhoods north and south of them. In Houston, we have the homeless encampments. It would not be rational if the city of Houston simply said, We're going to take the homeless encampment here and we're going to move it over here. And that's exactly what the terge and the authority and the city authorized here. They took a blight, drainage problems in Memorial City, where roads would flood and parking lots would flood, and they just put it into the neighborhoods. And we have not heard any rational basis justifying a legitimate government interest in transferring blight from one area simply to another area. That is the substantive due process claim that we are making, and the Fourth Amendment claim that we allege is seizure. I see my time is over. I'd like to reserve or balance my time. Thank you very much. May it please the Court. In the 12 minutes I have been allotted today, I want to try to focus on two issues, because I think they allow the Court to cut through a lot of these issues and a lot of the briefing and the 128-page opinion. Who are you? This is Colleen Petty, city of Houston. I'm sorry, I thought you had the notation there. And those two questions are this. Whether there's been a continuing violation, constitutional violation here. Aside from the allegations, they have to abide by these requirements. And indeed, whether there's been any constitutional violation at all. And second, whether defendants' acts were reasonable or, as Judge Jones talked about, had a rational basis. And I think the best way that the Court can see those and see the correct decision of the district court is by looking through the lens of the statute of limitations, this notion of a continuing violation. Because here you really get down to one alleged constitutional violation. Now the plaintiffs concede in this case that without the continuing violation doctrine, they don't have a claim or they have one claim. And that's the key to opening up things that happened in 2009, 2004, 2007. Now we agree with Judge Harmon that that doctrine doesn't apply and we briefed that at page 43 to 48 of our brief in part because they said they put us on actual notice of a claim in 2009 but they claimed they were not on actual notice of a claim in 2009. But for purpose of this argument and for cutting through the weeds here, let's assume that their argument applies. Let's assume that it applies. They still don't have any evidence or pleading that there is a constitutional violation here or that the doctrine applies. And you can see that because they concede in their pleadings, they concede in their briefing, that the only alleged constitutional violation that took place within the limitations period that would open up all of the others or if it was a street act, would open at least some of them, is the 2015 CIP, Capital Improvement Program that was approved. They talk about this at page 55 on their brief. Now that couldn't possibly be a constitutional violation because the project wasn't completed until June 2017 which was 13 months after they filed suit. And so it couldn't possibly have caused the flooding before. More important, the project expanded the detention pond. They try to characterize it as a beautification project. It expanded the detention pond and you can see that at page 533 of the record. It gave the city half an acre of land at Gessner at I-10 which isn't cheap, to expand the detention pond. And more important, it included what's called vault detention which is underground storage that was designed specifically for the existing, with drainage for adjacent properties. Things like townhouses and apartment buildings that are along Westview. So that was what that project is. They concede and the court noted that they concede at page 878 of the record, that those projects designed to eliminate blight, designed to encourage private development, alleviate traffic congestion, elevate the tax base and all of those things provide a rational basis for those activities. What they say, however, is that these projects diverted funds from their projects. However, the Gould case that we cite says that failing to fund something, failing to, even if you pass a budget that doesn't include something, doesn't count for statute of limitation purposes. So the only thing this court really has to analyze is that 2015 CIP. Now plaintiffs would have you believe that they're sort of a binary choice, that it was either that CIP or it was their projects. This is the city of Houston. There are a thousand other projects that that could have gone to. So our position here is there is no continuing violation because there was no constitutional violation. And you can see that if you then look at the ultimate questions here, which we can skip over to Judge Jones talked about them. The first one is rational basis. The due process, due course of law have to be analyzed on a rational basis. Now the plaintiffs in this case have tried to shift that burden to us, but the U.S. Supreme Court in Heller v. Doe has said that the city has no obligation to produce evidence to sustain the rationality of the statutory classification. In fact, the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it whether or not the basis even has a foundation in the record. They haven't even come close to do that. They haven't tried to do that. Instead, the only thing that they say is it benefited private interests or it was an example of favoritism. I will interject as a point of personal privilege and not being a resident of the city that the citizens of Houston voted a flood improvement pact how many years ago? 7, 8, 9, 10 years ago and apparently hardly any of that has ever been spent on drainage problems. Your Honor I mean, there's rational basis and then there's rationality and I'm glad you're not trying to prove the rationality of the city's approach. Well, Your Honor, number one the failure to expend funds as I say under Gould isn't actionable or doesn't apply for the statute of limitation purposes and second, as a factual matter, I would vehemently disagree with the court as to the expenditure of funds. I deal with the drainage fee on a daily basis and I can tell you that those funds have been expended but that's not part of this record. What is part of the record though is their claim that somehow there is favoritism here that monies have been spent but they've been spent on the wrong projects. The problem with that is that they concede, as suggested they concede that these projects would be perfectly fine that the 2,000 CIP projects would be perfectly fine if only you coupled them with projects in their neighborhood. So they're not saying they're bad they're not saying as was suggested I think by Judge Jones and Freeman that the processes and that the permits were improperly given they're just saying we didn't get ours too and that's not actionable and they cite Tasimi which Judge King was the author of that opinion but those cases involve direct action against a particular property. There's not any here. Now you would have the plaintiffs would have you believe that somehow there was, you know, a direct direct knowledge or a direct action by the city in flooding these areas. This is not like a release case. This is not the Kingwood case. This is not the Attucks Dam case. This is not like any of the other cases that deal with flooding I think Arkansas wildlife case in the Supreme Court. This is a case where there was a study that said if you do projects over here in some areas you might change the flow of water. That's important because this is not a case in which the city had any information that if you do this particular project you're going to flood these people and that's a big, big difference in terms of both causation knowledge and intent because they have to show intent. Now the courts have said with regard to rational basis that land use decisions are matters of local concern and they can't be transformed into substantive due process based only on the allegations that government officials acted with improper motive. That's the United Artists case that we signed. That's the only thing they have here that we had some improper motive. There's no case, not Simi, not Severance, not any of these cases that says that that is an appropriate substantive due process claim. The one that they've offered is the Smith case where a bridge was given to another party but again there was direct action on a specific property there was a state created right in an easement and it was directed only to that party and there was a rational, there was not a rational reason for it. The party in Simi, for example, negated any possibility of needing, I think it was a five foot park and they negated all possibilities of rational basis. Fourth amendment requires reasonableness and there's not reasonable, there's not a pleading that these actions were unreasonable. The fact that decisions, and I think Judge Jones raised this in either this or the last case the fact that actions of a city are ill-advised or even negligent don't state a fourth amendment case. Now I'm not suggesting that ours are, but there is a protection for cities to be wrong, to get it wrong and that's all that they're really suggesting here. In fact again, as I've suggested in Freeman the court said that the ultimate test of reasonableness is fulfilled in this case by the city's adherence to its ordinance. There's no suggestion in this case that the city did anything out of the ordinary except not put the plaintiffs first and that's a problem. The first, second third, fourth, seventh, ninth and eleven circuits have already cautioned and already held that the federal courts do not sit as zoning boards of review. That's all that this court is being asked to do in this case. We agree with them. They're not asking that they take over the entire case. What they're asking is that this court take over a certain part of town and I would suggest to you that if the court gives that relief and says that you now can force someone to appoint a special master force them to do projects that every taxpayer in town is going to want the same relief for their area and you will have a wholesale takeover. So that is one lens that the court can, I think, view the case through. The second one, I think, is the idea that all of the causes of action, be they Fourth Amendment or substantive due process or due course of law, require action targeted to a specific property. Here they haven't even identified the properties. They haven't given their addresses in most cases. They've talked vaguely about neighborhoods. They've talked vaguely about flooding the mall. And at our brief at Note 10, we talk about the cases that say that you've got to have an easement of some sort or a rezoning or a permit or demolition. Something that deals with a specific property. Here they're talking in these kind of general terms about flooding the neighborhood. The same is true for the Fourth Amendment. The violation requires, in that case, an intentional acquisition of physical control. You have to have a meaningful interference with possessory interests but it has to be directed to a specific project. In fact, the Laughlin case out of the Fifth Circuit says that a willful decision is one directed to the seizure of a specific property. Quote, the occasions where seizure has been found involve government action directed to the party's property not actions taken as to nearby land, the effects of which were felt by the complainant. In fact, we have not recognized liability, and this is what the Kirkhart said, where the government only knows that someday, somewhere it's performance of a general government function such as granting permits or approving flats will result in some unspecified, excuse me, will result in damage to some unspecified parcel of land within its jurisdiction. That is the only thing that they have asked for here. That's not relief that they're entitled to. They haven't pled any direct action against their property, nor have they shown any lack of rational basis, lack of reasonableness, or any continuing violation. As a result, the trial court's decision was absolutely spot on if it was a little bit long, and it should be affirmed. Thank you. Good morning, and may it please the court. My name is Barry Abrams. I'm here for two parties, the Tax Increment Reinvestment Zone and the Memorial City Redevelopment Authority, and I want to focus the court's attention on the two procedural reasons why Judge Harmon was correct in concluding that my two clients don't belong in this lawsuit. First, with respect to the Tax Increment Reinvestment Zone, Judge Harmon correctly concluded that under the Darby decision, the zone is not a suable entity, and it's not a suable entity because it's not been accorded an express jural authority by the city to sue and be sued. It's a geographic zone. Its job is to provide recommendations and administration to assist the city in trying to improve economic development and conditions in the zone. It has no ability to sue and be sued. This court has concluded that the analysis of whether or not an entity is suable starts with a look at state law, and in this instance, the state law that we start with is the city charter of the city of Houston, which vests sole authority for the power to sue and be sued in the city of Houston itself. The statutory authority that allows for the creation of these types of districts does not speak to any right to sue or be sued. The plaintiffs have attempted to skirt the incontrovertible fact that there is no express authority conferred on the terms to sue and be sued by making an implied argument referencing the fact that certain general powers have been delegated to the terms. None of those, however, involve the ability to sue or be sued. And as the district court correctly concluded, looking to the district court decision in Skyway Towers where the question was whether the city council of San Antonio could be sued independently from the city, that general grants of power do not suffice under the appropriate test to reflect a decision to confer authority on this subservient or subordinate municipal entity to sue and be sued. The zone, this geographic area that collects incremental tax revenues is akin to another municipal apartment and the court is familiar with the legion of cases in which you have concluded that municipal departments, usually police departments or sheriff departments and the like, are not juror entities who can properly be sued. The court has referenced cases suggesting that the zone could be sued because it has been named along with the city. That too we've pointed out in our briefing is not a correct reading of this court's case law, which has found that when a non-suable entity has been joined with, for example, a municipality, the proper procedural approach is to allow a claim to proceed against the municipality and to dismiss the entity that cannot be sued. So point number one, the zone is not a suable entity and so irrespective of the merits or demerits of the plaintiff's claims, it doesn't belong in the case. The plaintiffs have never pointed to any express grant of authority for it to be sued or to sue. With respect to the Memorial City Redevelopment Authority and the zone jointly, Judge Harmon was correct for the reason Judge Graves alluded to. It is uncontroverted in this record. As a matter of fact, the plaintiff has pled that although the authority and the tiers boards recommend projects, the city council has final approval. My clients recommend, they administer, they manage, but they don't have the power of the purse and they don't have the power to actually implement, adopt, pardon me, policies for the city of Houston. That requires an action of the city council of Houston. Why is that significant? Under section 1983, that means the actions of my two clients are not actions by parties with the authority to establish final policy regarding the conduct that the plaintiff is complaining about. Why is that important? It's important because that means my client's actions cannot be the moving force of any constitutional violation. So for those two reasons, we submit Judge Harmon was absolutely correct in concluding that neither the zone nor the authority is a proper party to this action and should be dismissed independent of the merits of the substantive arguments which also support dismissal. Unless the panel has other questions, we'll rely upon our briefing with regard to the substantive elements but request that you focus on these procedural elements that are unique to the zone and the authority and warrant an affirmance of Judge Harmon's judgment dismissing them both from this proceeding. Thank you. Rebuttal. A couple of points. Going back to Judge Graves' question about the decision maker in this process, we heard from my brother over here that the TERS and the authority are not the final decision maker. We think that's not the analysis under the Monell case. Monell clearly states you can have a policy, you can have an ordinance, you can have a regulation. It doesn't matter exactly which one of those it is. And what we believe and what we briefed is that the TERS and the authority, the unified board, make the policy of how to address drainage in the TERS district and whether that causes impacts outside the district. It's undisputed, I think, that the city under Monell is a potentially liable party because they pass those capital improvement plans as an actual ordinance even though the city, I think, might dispute that but I don't know if they really realistically can. They pass an ordinance to approve the budget plans but those budget plans are recommended pursuant to the final policy which is a decision of the authority and the TERS that they make about how to address that. With respect to rational basis, we believe that we met our pleading burden on whether there was a rational basis for any of these decisions. We look to the Mahone case and the Zinnerman case that we cited on page 34 of our brief that sometimes rational basis can be a fact-specific inquiry. I don't believe it is the plaintiff's burden to negate, as the city argued, every single potential rational reason why a city might take an action. I've never seen that in case law and I just don't think that is the current status of case law. Going to your question, Judge King, I don't believe and we argued this, that we risk a case of massive expansion, as the city argued, of Fourth Amendment or substantive due process cases in the city of Houston. We haven't seen that happen. As I said in my direct, in my main argument, this is a specific situation. This is a situation that's developed over many years where the TERS is the primary focus and it is a unique situation. We don't have this situation in other TERSs. This is particular to TERS 17 to Memorial City. Just touching on the city's arguments about statute limitations, I'd like to say that we have alleged ongoing violations. We briefed that to the panel every single year, except one when the city did not approve a budget plan, but every single year the city, by ordinance, passes a budget plan. Every single year the TERS and the authority create a budget plan. It's a five-year plan. It has various projects. Projects appear on the plan. Projects disappear off the plan. That's a changing target. Each year, we have projects that are being implemented with public money. Most of those projects, many of those projects, are drainage projects and those change the situation constantly. It's not like there was one decision in 1999 to set up the TERS or there was one event in 2009 that changed flooding forever. We have a changing situation on the ground that year to year creates, and we allege, an ongoing violation. We're not arguing favoritism for the residential neighborhoods over any other neighborhood in Houston. What we have alleged is harm to the residential neighborhoods caused by the arbitrary action of these governmental bodies spending public money in a way that benefits themselves and harms the residents. That should not be the standard for whether a plaintiff, a residential plaintiff has a right to argue their case in front of federal court. We urge you that the district court's opinion which conflated all our Fourth Amendment substantive due process claims, due process of law claims, into a Fifth Amendment tort claim, we urge that that decision was wrong and needs to be reversed and that the plaintiffs in this case have a right to go and argue their case whether we win or lose on summary judgment or on the merits, we argue for that right to do that. Thank you very much. Thank you counsel. The court will take this matter under advisement. That concludes the matters that we have on today's oral argument docket. We are adjourned.